18-1182-cv
Kopchik v. Town of East Fishkill

# UNITED STATES COURT OF APPEALS
# FOR THE SECOND CIRCUIT

## SUMMARY ORDER

**RULINGS BY SUMMARY ORDER DO NOT HAVE PRECEDENTIAL EFFECT. CITATION TO A SUMMARY ORDER FILED ON OR AFTER JANUARY 1, 2007, IS PERMITTED AND IS GOVERNED BY FEDERAL RULE OF APPELLATE PROCEDURE 32.1 AND THIS COURT'S LOCAL RULE 32.1.1. WHEN CITING A SUMMARY ORDER IN A DOCUMENT FILED WITH THIS COURT, A PARTY MUST CITE EITHER THE FEDERAL APPENDIX OR AN ELECTRONIC DATABASE (WITH THE NOTATION "SUMMARY ORDER"). A PARTY CITING A SUMMARY ORDER MUST SERVE A COPY OF IT ON ANY PARTY NOT REPRESENTED BY COUNSEL.**

At a stated term of the United States Court of Appeals for the Second Circuit, held at the Thurgood Marshall United States Courthouse, at 40 Foley Square, in the City of New York, on the 26th day of December, two thousand eighteen.

PRESENT:  JOHN M. WALKER, JR.,
    PIERRE N. LEVAL,
    CHRISTOPHER F. DRONEY,
     *Circuit Judges*.

---

STEVE KOPCHIK, III,

    *Plaintiff-Appellant*,

  v.           No. 18-1182-cv

TOWN OF EAST FISHKILL, NEW YORK,

    *Defendant-Appellee*.

---

FOR PLAINTIFF-APPELLANT:  JANE BILUS GOULD, Gould & Berg, LLP, White Plains, NY.

FOR DEFENDANT-APPELLEE:  NICHOLAS A. PASCALE, Drake Loeb, PLLC, New Windsor, NY.

Appeal from the United States District Court for the Southern District of New York (Briccetti, *J.*).

**UPON DUE CONSIDERATION, IT IS HEREBY ORDERED, ADJUDGED, AND DECREED** that the judgment of the district court is **VACATED AND REMANDED.**

Plaintiff-Appellant Steve Kopchik appeals from a March 29, 2018, judgment of the United States District Court for the Southern District of New York dismissing his retaliation claim under the Age Discrimination in Employment Act ("ADEA") and his disability discrimination claims under the Americans with Disabilities Act ("ADA") and New York State Human Rights Law ("NYSHRL") for failure to state a claim, pursuant to Federal Rule of Civil Procedure 12(b)(6).

We review *de novo* a district court's dismissal of a complaint under Federal Rule of Civil Procedure 12(b)(6), "accepting all factual claims in the complaint as true, and drawing all reasonable inferences in the plaintiff's favor." *Famous Horse Inc. v. 5th Ave. Photo Inc.*, 624 F.3d 106, 108 (2d Cir. 2010). The complaint must plead "enough facts to state a claim to relief that is plausible on its face." *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570 (2007). For the reasons stated below, we vacate the district court's decision and remand the case for further proceedings consistent with this order.

1. Background

Kopchik was employed as the Supervisor of Buildings and Grounds by the Defendant-Appellee Town of East Fishkill ("the Town"). Kopchik alleges that he was involved in an on-the-job motor vehicle accident in October 2014. The accident resulted in concussions, orbital fracture, and post-concussion syndrome. Kopchik was hospitalized for a week, and he was unable to work for several months. After returning to work, Kopchik was able to continue performing his supervisory role adequately but, as the Town knew, he suffered "residua" from his head injuries.

In addition, on January 7, 2015,[1] Kopchik filed a charge of age discrimination with the EEOC against the Town and its Town Supervisor, John Hickman, alleging that they improperly attempted to force him to retire on September 22, 2014 (prior to Kopchik's on-the-job accident). The EEOC subsequently issued him a right-to-sue letter. The 90-day period for Kopchik to bring an ADEA claim after the EEOC issued the letter expired on November 30, 2015. Less than two months later, on January 28, 2016, the Town Board (through a resolution) eliminated all building- and ground-maintenance positions—including Kopchik's position as supervisor—and consolidated those positions into its

---

[1] Kopchik alleges that he filed the EEOC charge of age discrimination in the fall of 2014, but the charge shows a January 7, 2015, filing date.

Highway Department.  The resolution authorized the Town's Highway Superintendent to rehire all these employees—except Kopchik—as laborers and motor equipment operators, and at the same salary they earned in their previous positions.

As to Kopchik, the Town Board merely authorized the Town Supervisor to recommend to the board that it pass another resolution that would permit rehiring Kopchik as a motor equipment operator, a lower level position than supervisor.

Kopchik alleges that the key decision makers[2] for the Town were aware that he lacked a license that was required for his becoming a motor equipment operator.  They were also aware that the ongoing impact of his head injuries would make it difficult for Kopchik to pass the licensing examination required to become a motor equipment operator.

The Town gave Kopchik until February 26, 2016, to obtain another job with the Town or face termination.  The Town knew that, due to Kopchik's "health status," the "lifetime medical benefits" he stood to receive by retiring from his current position were of "vital importance."  App'x 9.  He alleges that if he did not retire by February 26, 2016, he would have been "terminated" and stood to lose those medical benefits.  App'x 9–10.  The Town purported to negotiate with Kopchik during this period but, as of February 25, 2016, the Town, by design, had still not offered Kopchik a job he was physically able to perform.  And so, he did retire, on February 25, 2016, the day before he would have been terminated.  Kopchik filed a charge of disability discrimination with the EEOC on April 25, 2016,[3] and he timely filed suit after receiving a right-to-sue letter in May 2017.

Kopchik claims that the Town retaliated against his age discrimination charge through its decision to eliminate all the building- and ground-maintenance workers but which, in effect, ended only Kopchik's employment with the Town.  Kopchik also contends that the Town violated the ADA and the NYSHRL when it eliminated his supervisor position and offered only the possibility that Kopchik could retain employment as a motor equipment operator, well-knowing that Kopchik's cognitive impairments would prevent him from performing that position's responsibilities.

Following the Town's motion to dismiss pursuant to Federal Rule of Civil Procedure 12(b)(6), the district court dismissed all the claims for failure to plausibly allege that their respective causation elements were satisfied.

---

[2] The complaint refers to "The Town, its officers, agents and employees."  App'x 7.

[3] The Town does not argue that Kopchik failed to exhaust administrative remedies as to his ADA claim. *See Hardaway v. Hartford Pub. Works Dep't*, 879 F.3d 486, 489–92 (2d Cir. 2018) (holding that failure to exhaust administrative remedies is an affirmative defense).

3

2. ADEA Retaliation Claim

To state a claim for retaliation under the ADEA, a plaintiff must plausibly allege that "(1) defendants discriminated—or took an adverse employment action—against him, (2) 'because' he has opposed an[ ] unlawful employment practice" regarding his age. *Vega v. Hempstead Union Free Sch. Dist.*, 801 F.3d 72, 90 (2d Cir. 2015) (citing Title VII, 42 U.S.C. § 2000e–3(a)); *see Schnabel v. Abramson*, 232 F.3d 83, 87 (2d Cir. 2000) (stating that the same standards apply to Title VII and ADEA claims).

"As for causation, a plaintiff must plausibly plead a connection between the act and his engagement in protected activity." *Vega*, 801 F.3d at 90–91. At the pleading stage, this requires only that a plaintiff "give plausible support to a minimal inference of discriminatory motivation." *Littlejohn v. City of New York*, 795 F.3d 297, 319 (2d Cir. 2015). A causal connection in retaliation claims can be shown "(1) indirectly, by showing that the protected activity was followed closely by discriminatory treatment, or through other circumstantial evidence such as disparate treatment of fellow employees who engaged in similar conduct; or (2) directly, through evidence of retaliatory animus directed against the plaintiff by the defendant." *Id.* (citing *Gordon v. N.Y.C. Bd. of Educ.*, 232 F.3d 111, 117 (2d Cir. 2000)).

Moreover, "for an adverse retaliatory action to be 'because' a plaintiff made a charge, the plaintiff must plausibly allege that the retaliation was a 'but-for' cause of the employer's adverse action." *Vega*, 801 F.3d at 90. "'[B]ut-for' causation does not[, however,] require proof that retaliation was the only cause of the employer's action, but only that the adverse action would not have occurred in the absence of the retaliatory motive." *Id.* at 91 (quoting *Zann Kwan v. Andalex Grp. LLC*, 737 F.3d 834, 846 (2d Cir. 2013)).

Here, the district court held that, "absent other facts," the nine months that passed between the Town becoming aware of Kopchik's EEOC age-discrimination charge and the Town's efforts to terminate him was too long to support a causal inference between the two events. App'x 132. We disagree. Because whether too much time has passed to support a causal inference generally depends on the particular allegations at hand, we have "not drawn a bright line to define the outer limits beyond which a temporal relationship is too attenuated to establish a causal relationship between the exercise of a . . . right and an allegedly retaliatory action." *Littlejohn*, 795 F.3d at 319–20. For example, we have found that an eight-month gap between an EEOC complaint and an allegedly retaliatory action was not too long to plausibly allege a causal relationship. *Grant v. Bethlehem Steel Corp.*, 622 F.2d 43, 45–46 (2d Cir. 1980). And we have come to the same conclusion as to similar gaps in time. *See Summa v. Hofstra Univ.*, 708 F.3d 115, 128 (2d Cir. 2013) (finding that seven-month gap was not too long in "the particular context in this case"); *Espinal v. Goord*, 558 F.3d 119, 129 (2d Cir. 2009) (finding that six months was not too long).

4

Here, even if Kopchik's allegations as to causation relied on the timing of the Town's actions, we do not agree that they failed to plausibly support a causal inference. A nine-month gap may not be too long to support such an inference, particularly given that Kopchik alleges the Town's mechanism for retaliating was a Town Board resolution.[4] It is plausible that the significant restructuring undertaken by the Town and resulting in the loss of Kopchik's position would take longer to plan and formally adopt.

Moreover, Kopchik alleges additional facts to plausibly suggest why the Town may have waited nine months. He alleges that the 90-day period within which he could file suit as to his 2014 EEOC complaint expired just two months before the Town Board passed its resolution. He claims that the Town may have waited until this time to pass its resolution so that he could no longer bring suit as to those claims. The district court considered this argument and held that, if the Town were waiting until the 90-day period expired, it would have been implausible for the Town to wait another two months to retaliate against Kopchik. We disagree. Assuming the truth of Kopchik's allegations, it would be plausible for the Town to let some further time pass, so as to conceal its motivation.[5]

In any event, Kopchik does not rely on temporal proximity alone. Rather, drawing all reasonable inferences from the complaint, Kopchik plausibly alleges that after he filed his EEOC age-discrimination charge, the Town essentially rehired into similar positions all its ground- and building-maintenance workers except Kopchik, as a pretextual means to terminate his employment. It is plausible that the Town did so in response to the EEOC charge. These allegations of discriminatory treatment are thus sufficient to state the causation element of an ADEA retaliation claim. *See Littlejohn*, 795 F.3d at 319.

The district court also held that, in the absence of indirect evidence of discriminatory treatment based on temporal proximity, and of other evidence of retaliatory animus, Kopchik was required to "show he was treated differently from a similarly situated employee who did not engage in a protected activity," and that he failed to do so. App'x 133. The district court found that the "complaint implies . . . that plaintiff was not similarly situated" to the other Town workers whose maintenance positions were eliminated because Kopchik was the only supervisor. *Id*. The district court cited to our decision in *Richards-*

---

[4] *See, e.g., Childrey v. CGI Techs. & Solutions*, No. 2:14cv616-MHT, 2018 WL 1519048, at *5 (M.D. Ala. Mar. 28, 2018) ("[W]here . . . the plaintiff relies on temporal proximity alone, . . . circumstantial evidence— such as the nature of the business, and how employment decisions are made—would be relevant in determining the length of time that may establish causation, such that a bright-line cutoff is inappropriate. For instance, [where] employment decisions must run through multiple levels of review . . ., a longer period might be sufficient.").

[5] The Town contends that it is implausible that it would wait until the expiration of the 90-day period because Kopchik still could have brought claims as to the same conduct under New York law or under 42 U.S.C. § 1983 after that time. We disagree with this, as well. The time-barring of the ADEA claim is not inconsequential, even when other claims might remain viable.

*Byers v. N.Y.C. Department of Finance*, 449 Fed. Appx. 55, 57 (2d Cir. 2011). There, invoking the familiar *McDonnell Douglas* framework, we stated that one of the ways the plaintiff might have made out a *prima facie* retaliation case at summary judgment was to provide "circumstantial evidence that she was treated differently from any similarly-situated employee." *Richards-Byers*, 449 Fed. Appx. at 57.

As we explained in *Littlejohn v. City of New York*, however, a plaintiff "need only give plausible support to a minimal inference of discriminatory motivation" at the pleading stage. *Littlejohn*, 795 F.3d at 316. Kopchik has done so here.

Accordingly, we conclude that the district court improperly dismissed Kopchik's ADEA retaliation claim.

### 3. ADA and NYSHRL Discrimination Claims

We next consider whether the district court properly dismissed Kopchik's claims of disability discrimination under the ADA and NYSHRL. "The elements of a [discrimination] claim under the ADA are that: (1) the employer is subject to the ADA; (2) the plaintiff is disabled within the meaning of the ADA or perceived to be so by her employer; (3) she was otherwise qualified to perform the essential functions of the job with or without reasonable accommodation; (4) she suffered an adverse employment action; and (5) the adverse action was imposed because of her disability." *Davis v. N.Y.C. Dep't of Educ.*, 804 F.3d 231, 235 (2d Cir. 2015). "New York State disability discrimination claims are governed by the same legal standards as federal ADA claims." *Rodal v. Anesthesia Grp. of Onondaga, P.C.*, 369 F.3d 113, 117 n.1 (2d Cir. 2004).

As an initial matter, we find Kopchik's allegations sufficient to satisfy the disability element of his discrimination claims. To be considered disabled, a plaintiff must have "a physical or mental impairment that substantially limits one or more major life activities; a record of such impairment; or be[] regarded as having such impairment." 42 U.S.C. § 12102(1). Major life activities include, *inter alia*, "learning, . . . concentrating, [and] thinking." *Id*. § 12102(2). As we recounted in *Parada v. Banco Indus. De Venezuela, C.A.*, 753 F.3d 62, 68 n.3 (2d Cir. 2014), a regulation enacted pursuant to the ADA Amendments Act of 2008 provides that "[t]he term 'substantially limits' shall be construed broadly in favor of expansive coverage, . . . [and] is not meant to be a demanding standard." (quoting 29 C.F.R. § 1630.2(j)(1)(i)). Thus, "[a]n impairment need not prevent, or significantly or severely restrict, the individual from performing a major life activity in order to be considered substantially limiting." *Id.* (quoting § 1630.2(j)(1)(ii)).

Here, Kopchik plausibly alleges both that he was substantially limited in his ability to learn, concentrate, and think from 2014 onward and that the Town regarded him as such. As to the first point, Kopchik's allegations of severe head injuries and specific diagnoses from the 2014 on-the-job motor vehicle accident plausibly support that his ability to learn,

6

think and/or concentrate were substantially limited.[6]  Moreover, Kopchik provides additional support for these effects, and that they were long-lasting, as he had particular difficulty in 2016 "plow[ing] significant amounts of snow with *changing routes* in areas of the Town that were *unfamiliar* to him."  App'x 9 (emphasis added).

As for the Town regarding Kopchik as disabled, we think it is plausible that the Town was familiar with the type, extent, and "residua" of its employee's injuries from 2014 onward.  The injuries, after all, resulted from an on-the-job accident, and Kopchik alleges he was out of work for months.

Moreover, Kopchik plausibly alleges that the Town eventually and detrimentally acted upon that information in 2016 when it terminated his position as a supervisor.  A plaintiff need only "give plausible support to a minimal inference of discriminatory motivation" at the pleading stage.  *Littlejohn*, 795 F.3d at 311; *see Dooley v. JetBlue Airways Corp.*, 636 Fed. Appx. 16, 21 (2d Cir. 2015) (applying this standard to ADA discrimination claim).  The district court held that whether the Town Board's resolution eliminating the maintenance workers' roles "had a unique effect on plaintiff because of his disability is irrelevant to [the] causal connection" element.  App'x 135.  But this did not accurately capture the extent of the facts Kopchik alleges.  As discussed above, these allegations include that the resolution appeared designed to force only Kopchik to find new employment with the Town, that the Town then offered him only employment that it believed he was substantially unable to perform, and that, as a result, his employment with the Town ended.  Kopchik's allegations thus satisfy the minimal pleading threshold as to the causation element of Kopchik's ADA and NYSHRL discrimination claims.[7]  *See id*.

4. Other Elements of Kopchik's Claims

Kopchik and the Town also raise arguments regarding other elements of Kopchik's claims that the district court did not address when it dismissed Kopchik's claims for failure to satisfy causation pleading standards.  We leave it to the district court to consider these arguments in the first instance.

---

[6] Kopchik alleges that he was able to perform the supervisor job after his head injuries until the 2016 elimination of the position, but that is not mutually exclusive with being limited in thinking, learning, or concentrating during that period.  Indeed, "[a]n impairment that substantially limits one major life activity need not substantially limit *other* major life activities,"—here, for example, Kopchik's work as a supervisor—"in order to be considered a substantially limiting impairment."  29 C.F.R. 1630.2(j)(1)(viii) (emphasis added).

[7] In addition, the district court stated that if it were to consider Kopchik's claim as a "disparate treatment claim[,] . . . [Kopchik] has not alleged he was similarly situated" to his fellow employees.  App'x 135.  We express no opinion as to whether Kopchik's allegations meet that standard because, again, an ADA plaintiff need only support "a minimal inference of discriminatory motivation" at the pleading stage.  *Littlejohn*, 795 F.3d at 311.  Kopchik has done so here.

7

5.  <u>The District Court's Denial of Leave to Replead</u>

Lastly, we call to the district court's attention that in *Loreley Fin. (Jersey) No. 3 Ltd. v. Wells Fargo Sec., LLC*, 797 F.3d 160, 189–91 (2d Cir. 2015), we expressly rejected the procedure that the district court followed here as the basis for denying Kopchik the opportunity to replead.  When the Town filed its motion to dismiss Kopchik's complaint for failure to state a claim, the district court—before ruling on the motion—asked Kopchik if he would like to amend his complaint, noting that the court would not expect Kopchik to have another opportunity to do so.  Kopchik declined.  After the district court granted the Town's motion to dismiss, the court did not grant Kopchik the opportunity to amend his complaint.

There is no obligation on a plaintiff to expend time and resources to amend a complaint before knowing whether the court will find it insufficient, and if so, in what ways.  "Without the benefit of a ruling, many a plaintiff will not see the necessity of amendment or be in a position to weigh the practicality and possible means of curing specific deficiencies."  *Loreley*, 797 F.3d at 190.  It is inappropriate to deny a plaintiff the opportunity to replead after a defendant's motion to dismiss is granted, simply because the plaintiff decided not to replead before learning whether the court would find the complaint insufficient.  The opportunity to amend the complaint is appropriately presented *after* the district court rules on a motion to dismiss.

Accordingly, the order of the district court is **VACATED AND REMANDED.**

FOR THE COURT:
Catherine O'Hagan Wolfe, Clerk of Court

8